```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                       ATHENS DIVISION

PETER MCINERNEY and KELLY        *
MCINERNEY,
                                 *
     Plaintiffs,
                                 *
vs.                                        CASE NO. 3:13-CV-100 (CDL)
                                 *
WELLS FARGO HOME MORTGAGE,
INC., WELLS FARGO BANK, N.A.,    *
and FEDERAL HOME LOAN MORTGAGE
CORPORATION,                     *

     Defendants.                 *
```

O R D E R

The present action represents yet another example of a borrower seeking to avoid the inevitable consequences associated with failing to pay back a debt. Plaintiffs lost their home through foreclosure because they defaulted on their loan. But rather than accept responsibility for their default, they have filed the present action asserting various claims for relief. These claims are predicated on three erroneous legal theories: (1) that the foreclosure was unauthorized because the party that foreclosed did not also hold the promissory note that was secured by the security deed on which the foreclosure was based; (2) that Plaintiffs were intended beneficiaries of the federal Home Affordable Modification Program ("HAMP") and may assert a claim based on violations of the conditions of that program; and

(3) that a loan may be contractually modified even though the essential terms of the modification are never agreed to. Unfortunately for Plaintiffs, Georgia law clearly permits the holder of a valid security deed to foreclose even if the foreclosing party does not also hold the promissory note that is secured by the security deed.  Therefore, Plaintiffs' claims for wrongful foreclosure and fraud that rely on the theory that the foreclosure here was not authorized must fail.  Furthermore, federal law is clear that the federal statute that created HAMP does not provide a private cause of action and does not make Plaintiffs intended beneficiaries of that program for purposes of asserting a private cause of action.  Accordingly, Plaintiffs' claims based upon HAMP likewise fail.  Finally, fundamental principles of contract law and promissory estoppel require that any modification of a previous contractual agreement must include the essential terms for the new modified agreement.  Since the alleged modification did not contain any of the essential terms, no claim can be made for breach of contract or promissory estoppel.  Since none of Plaintiffs' claims are plausible on their face, Defendants' Motion to Dismiss (ECF No. 3) is granted.

## MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's

2

complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

FACTUAL ALLEGATIONS

Peter McInerney and his wife Kelly initiated this action against Wells Fargo Home Mortgage, Inc. ("WFHM"), Wells Fargo Bank, N.A., and Federal Home Loan Mortgage Corporation ("Freddie Mac") in state court. They sought injunctive relief and damages

3

arising from alleged wrongful foreclosure, fraud, breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. After removing the action to this Court, Defendants filed the presently pending motion to dismiss arguing that Plaintiffs' Complaint fails to state a claim upon which relief may be granted.[1] As explained in the remainder of this Order, Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 3) is granted.

Plaintiffs allege the following in their Complaint. Mr. McInerney borrowed $176,000.00 from WFHM. As part of that transaction, he executed a Promissory Note and Security Deed. The Promissory Note showed WFHM as the lender, and the Security Deed granted a power of sale to WFHM and WFHM's "successors and assigns" over property the Security Deed conveyed. The Security Deed also provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Compl. Ex. B, Security Deed, ECF No. 1-1 at 77. On June 28, 2003, WFHM sold the Note to Freddie Mac. Freddie Mac then securitized the Note and placed it in a mortgage-backed security trust. In 2008, WFHM dissolved and its assets, including the McInerney Security Deed, were assumed by Wells Fargo as "successor by merger."

---

[1] Federal jurisdiction is based upon the joinder of Freddie Mac, a United States Government Agency for purposes of 28 U.S.C. § 1442, as a Defendant.

WFHM serviced the loan prior to its dissolution, and Wells Fargo continued to service the loan after the merger.

Mr. McInerney began missing payments on the loan in late 2007. In 2009, he lost his job. Throughout 2007-2010, he discussed modifying his loan with representatives of WFHM and Wells Fargo. In September 2009, Wells Fargo extended a three-month Trial Modification to Mr. McInerney under the federal Home Affordable Modification Program ("HAMP"). He made three timely payments under this agreement while waiting for a response to his request for permanent modification. After more back-and-forth with WFHM and Wells Fargo, Mr. McInerney received a letter on February 21, 2010 stating that his loan was in default and that he must pay amounts owed by March 23 to avoid foreclosure. On March 25, 2010, he received a letter stating that WFHM had referred the loan to begin foreclosure proceedings. On June 10, 2012, WFHM sent a letter to Mr. McInerney through the law firm McCalla Raymer, LLC, attempting to collect the debt owed. The letter stated that the "debt is owed to [WFHM], which is authorized to receive payment on your loan but which may not be the recorded holder of the security deed." Compl. ¶ 60, ECF No. 1-1 at 20-21. Mr. McInerney replied to McCalla Raymer, disputing whether Wells Fargo had the right to foreclose on the property. Wells Fargo sent a Notice of Foreclosure Sale to Mr. McInerney via McCalla Raymer on September 19, 2012, stating that

it was the successor by merger to WFHM. On November 6, 2012, Wells Fargo, acting on behalf of Freddie Mac as the holder of the Note, conducted a non-judicial foreclosure sale and purchased the property for $177,705.21. It then transferred the property to Freddie Mac, which had the equitable interest in the property because of the Note, for ten dollars. Freddie Mac filed a dispossessory action in Athens-Clarke County to evict the McInerneys. That action was dismissed because neither Wells Fargo nor Freddie Mac had filed foreclosure documents or deeds with the County proving that the property was foreclosed upon and sold. Freddie Mac filed a second dispossessory action on January 28, 2013. That action was stayed.

## DISCUSSION

Preliminarily, the Court finds that it is undisputed that Kelly McInerney was not a party to the loan transaction giving rise to Plaintiffs' Complaint. She is not listed as an obligor on the promissory note, nor is she listed as a grantor on the security deed. Accordingly, she has no standing to pursue the claims she asserts in this action. *See Henry v. Guaranteed Rates, Inc.*, 415 F. App'x 985, 985 (11th Cir. 2011) (per curiam) (explaining that a plaintiff does not have standing to bring claims based on a loan to which she is not a party). Her claims

are therefore dismissed.[2]  Mr. McInerney, as the party to the loan transaction, does have standing, but as explained below, his allegations fail to state claims upon which relief may be granted.

## I. Wrongful Foreclosure

To establish a claim for wrongful foreclosure in Georgia, a plaintiff "must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 174, 733 S.E.2d 457, 462 (2012) (internal quotation marks omitted).  The legal duties are laid out in the Georgia foreclosure statute.  A violation of that statute is necessary to establish a wrongful foreclosure. *Harris v. Chase Home Fin., LLC*, 524 F. App'x 590, 592 (11th Cir. 2013) (per curiam).  Mr. McInerney does not dispute that he defaulted on his loan.  Instead, he alleges that Wells Fargo did not have the right to foreclose on the property because it was not the secured creditor.

It is undisputed that Wells Fargo's predecessor in interest, WFHM, was listed in the security deed as the grantee.  There is also no dispute that when WFHM dissolved and merged

---

[2] The Court notes that even if Kelly McInerney did have standing, her claims would fail for the same reasons Mr. McInerney's claims fail.

into Wells Fargo, Wells Fargo obtained all of the rights and interest in property previously held by WFHM, including all rights under Mr. McInerney's security deed. Finally, Georgia law is clear that the fact that neither Wells Fargo nor WFHM held Mr. McInerney's promissory note did not prevent Wells Fargo from exercising its rights under the security deed. *See You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 74, 743 S.E.2d 428, 433 (2013) ("[T]he holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."). Therefore, unless something in the security deed prevented Wells Fargo from exercising its right to foreclose, Wells Fargo was authorized to foreclose on Plaintiff's property pursuant to the security deed it held on the property.

Mr. McInerney points to nothing in the security deed that directly prohibits the foreclosure by Wells Fargo in this case. Instead, Mr. McInerney relies on language in the Security Deed that authorizes the Promissory Note and Security Deed to be sold to a third party. *See* Security Deed, ECF No. 1-1 at 77 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold . . ."). Mr. McInerney claims that this language prevented the Security Deed from being split from the Promissory Note, and thus the Security Deed's power of

8

sale was extinguished when Wells Fargo transferred the Note to Freddie Mac.  He argues that although Wells Fargo indisputably continued to hold the Security Deed, it was no longer the secured creditor because it did not also hold the Note.  And he argues, therefore, that Wells Fargo violated O.C.G.A. § 44-14-162.2(a)'s mandate that "[n]otice of the initiation of proceedings to exercise a power of sale" in a security deed be given *by the secured creditor*.  The Court is not persuaded by this argument.  First, McInerney's interpretation of the provision in the Security Deed is strained.  That provision does not prohibit the splitting of the Security Deed and Promissory Note.  It simply authorizes both or either to be sold.  Moreover, McInerney's argument is directly contrary to the Georgia Supreme Court's holding in *You.*  Accordingly, the Court finds that Wells Fargo was authorized to foreclose on Plaintiff's property, and Plaintiff's wrongful foreclosure claim fails as a matter of law.

**II. Fraud**

Mr. McInerney's fraud claim is based on his allegation that Defendants "took part in a scheme to defraud borrowers by participating in the creation of a business model designed solely for the purposes of creating Mortgage Backed Security products and not home loans."  Compl. ¶ 105.  This claim rests on the argument that Georgia law does not permit the splitting

9

of a promissory note from a security deed as was done with the McInerney loan. But as the Court has previously explained, the Georgia Supreme Court has addressed this specific issue and determined that transactions such as the one here are authorized under Georgia law. *You,* 293 Ga. at 74, 743 S.E.2d at 433. Therefore, Plaintiff's fraud claim must be dismissed.

### III. Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Promissory Estoppel

Mr. McInerney claims that he was an intended beneficiary of Wells Fargo's contract with the Treasury Department under HAMP and suffered damages from Wells Fargo's alleged breach of that contract. A third party has standing to enforce a contract "if it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient." *Dominic v. Eurocar Classics,* 310 Ga. App. 825, 828, 714 S.E.2d 388, 391 (2011). There is no private right of action under HAMP. *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012) (per curiam). And "[t]he majority of courts have determined that homeowners are incidental beneficiaries, not intended beneficiaries, of the contract between a participating servicer and the federal government to participate in the HAMP program." *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012). Mr. McInerney's allegations in his Complaint do not

10

show that he was an intended beneficiary of the contract under HAMP, and therefore, this claim fails.

Mr. McInerney also claims Wells Fargo agreed to modify his loan and breached that contract when it failed to do so. But Mr. McInerney fails to allege the essential terms of the alleged loan modification contract. One of the fundamental principles of the law of contracts is that there must be mutual assent by the parties to all of the terms. O.C.G.A. § 13-3-1; *accord Broughton v. Johnson*, 247 Ga. App. 819, 819, 545 S.E.2d 370, 371 (2001). In the context of a loan modification, those terms would include the interest rate, new monthly payment amount, and loan maturity date. *See Gass v. CitiMortgage, Inc.*, Civil Action No. 1:11-CV-3713-RWS-JSA, 2012 WL 3201400, at *8 (N.D. Ga. June 25, 2012). Mr. McInerney does not allege that any specific modification terms were ever discussed, much less agreed to by the parties. Consequently, he has failed to allege sufficient facts to support a breach of contract claim based upon an alleged modification agreement.

Because Mr. McInerney's claim for breach of contract fails, his claim for breach of the implied covenant of good faith and fair dealing also fails. "[T]hat duty cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability" under Georgia law. *Miller*, 677 F.3d at 1117 ("internal quotation marks omitted).

11

"Inasmuch as [Plaintiff] cannot prevail on [his] breach of contract claim, [he] cannot prevail on a cause of action based on the failure to act in good faith in performing the contract." *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 374, 601 S.E.2d 842, 847.

Finally, Mr. McInerney alleges a promissory estoppel claim. That claim fails for reasons similar to those requiring dismissal of his breach of contract claim. He simply does not allege a sufficiently definite promise upon which he reasonably relied. Under Georgia law, a plaintiff claiming promissory estoppel must show that a "(1) defendant made certain promises, (2) defendant should have expected that plaintiff[] would rely on such promises, (3) the plaintiff[] did rely on such promises to [his] detriment, and (4) injustice can be avoided only by enforcement of the promise." *Houston v. Houston*, 267 Ga. App. 450, 451, 600 S.E.2d 395, 396 (2004) (first two alterations in original) (internal quotation marks omitted). "[P]romissory estoppel does not apply to vague or indefinite promises, or promises of uncertain duration." *Secured Realty Inv. v. Bank of N. Ga.*, 314 Ga. App. 628, 630, 725 S.E.2d 336, 339 (2012). As previously explained, Mr. McInerney did not allege the specific terms and conditions of any promises regarding a modification of his loan. *See Ga. Invs. Int'l, Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 673, 675-76, 700 S.E.2d 662, 664-65 (2010)

(finding a promise to renew a loan too indefinite to support a promissory estoppel claim because even though the alleged promises contemplated a certain duration, it lacked material terms such as an interest rate).  He also fails to allege how he relied on Defendants' alleged promises to his detriment.  His vague and conclusory allegations do not state a plausible claim for relief under a promissory estoppel theory.

## CONCLUSION

For the reasons explained above, Mr. McInerney's claims fail as a matter of law.  And he is not entitled to the relief he seeks.  Defendants' Motion to Dismiss (ECF No. 3) is granted.

IT IS SO ORDERED, this 16th day of December, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
